Philip M. Hess, Presiding Judge
Introduction
T.J. ("Appellant") appeals the judgment of the trial court granting a full order of protection under the Missouri Adult Abuse Act, §§ 455.005-455.090,[1] (the "Act"). E.D.H. alleged harassment and stalking under the Act. Appellant argues, among other things, there was insufficient evidence to "support" an order of protection against her. Appellant's conduct would not have caused fear of physical harm in a reasonable person. Appellant's conduct did not cause E.D.H. substantial emotional distress. We hold there was insufficient evidence to support the order of protection entered against Appellant. We therefore reverse.
Facts and Procedural Background
The record before us reflects E.D.H. and Appellant started a romantic relationship in the summer of 2012. In December 2013, E.D.H. ended the relationship. Appellant thereafter sent E.D.H. "some" texts, e-mails, and called him. The frequency of her attempted communication is not clear from the record. Aside from a few insulting text messages-she called him "cowardly"-the nature of the communications is unclear because E.D.H. did not pick up phone calls or otherwise respond to Appellant's communications. The parties' romantic relationship did not involve domestic violence or physical confrontation. Appellant ceased attempts to contact E.D.H. in July 2014. It is not disputed there was no contact between them thereafter.
E.D.H. received a phone call from a friend on August 2, 2017, informing him Appellant "posted" about him on a social media website. The record contains some, but not complete evidence of the posts. The primary, and most legible post in the record begins by stating: "A couple of years ago, so many of the socio-economic factors I discuss regarding black life and love ..." The post discussed her relationship with E.D.H. Portions of the post disparaged E.D.H., but did not make any threats against him.
E.D.H. filed a petition for an emergency ex-parte order of protection the same day. The form petition asked E.D.H. if he was "afraid of Appellant and [if] there is an immediate and present danger of domestic violence to [E.D.H.] or other good cause for an emergency temporary order of protection." E.D.H. wrote: "Defamation to my character. Contacting and referencing church and job. Don't know what she's capable of. I've been non-responsive ... but she won't go away!" The "check the box" petition[2] listed behaviors prohibited *63 under the Act. E.D.H. checked stalking and harassment.
The court granted the ex-parte order. A hearing to resolve a full order of protection occurred August 14, 2017.
In his testimony, E.D.H. reiterated that Appellant's social media posts defamed his character. The posts identified him by name. He stated the posts insinuated a plan to expose his adultery. Further, the posts contained "half-truths" and referenced his job, wife, and daughter. The posts occurred over "the span of 3 or 4 days."
Appellant stated the trigger for the posts were when she saw the renewal of E.D.H.'s vows to his wife. Appellant was unaware of E.D.H.'s marriage during her relationship with E.D.H. Appellant explained the identification of E.D.H., his wife, and his daughter, on social media was to tell her story in relation to African-American women's issues. She stated she is an advocate for African-American women's issues and always discusses such issues through the lens of her own experience.
The trial court granted a full order of protection for one year that would automatically renew for another year in August 2018. The order prohibited Appellant from "post[ing], plac[ing] or includ[ing] any derogatory, demeaning, disparaging, degrading, and/or belitting, comments, remarks, pictures or similar 'postings' about [E.D.H.] ... that would reveal [E.D.H.'s] identity" through Appellant's social media pages or the pages of others. The trial court's written judgment did not reference the Act. However, the judge indicated the grounds for the judgement were stalking and harassment in a "check the box" judgment form.[3]
Standard of Review
Appeals from a court-tried civil case are governed by Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976). We affirm the trial court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." Id. at 32. We view "the evidence and permissible inferences drawn from the evidence in the light most favorable to the judgment." Bateman v. Platte Cty. , 363 S.W.3d 39, 43 (Mo. banc 2012).
Discussion
Appellant raises several points on appeal.[4] Points I and II argue the trial court "erred" and "abused its discretion" because the facts and substantial evidence do not support a violation of the Act. We agree. We address Points I and II together as they essentially make the same argument. We only address Points I and II because they are dispositive of the appeal.
A petitioner may seek an emergency ex-parte order of protection under the Act by filing a verified petition alleging harassment, stalking, or domestic violence. § 455.020;
*64 K.M.C v. M.W.M. , 518 S.W.3d 273, 277 (Mo. App. E.D. 2017). Section 455.010(5) defines "domestic violence" as "abuse or stalking committed by a family or household member, as such terms are defined in this section." (emphases added). A "household member" includes, among other people, "any person who is or has been in a continuing social relationship of a romantic or intimate nature with the victim." § 455.010(7). The Appellant qualifies as a "household member." Appellant and E.D.H. were in a romantic relationship for five to seven months.[5] Therefore, she "has been in a continuing social relationship of a romantic or intimate nature" with E.D.H.
"Abuse" includes harassment. § 455.010(d). Harassment is "a purposeful or knowing course of conduct involving more than one incident ... that alarms or causes distress and serves no legitimate purpose." Id. "[The] course of conduct must be such as would cause a reasonable adult ... to suffer substantial emotional distress." Id. The Act provides a non-exhaustive list of conduct constituting harassment: a) "following another about in a public place or places"; or b) "peering in the window outside the window of another." Id.
Stalking is defined as when "any person purposely engages in an unwanted course of conduct that causes alarm to another person ... when it is reasonable in that person's situation to have been alarmed by the conduct." § 455.010(14). Alarm is to "cause fear of danger of physical harm." § 455.010(14)(a). Alarm has a subjective and objective component. K.L.M. v. B.A.G. , 532 S.W.3d 706, 708-09 (Mo. App. E.D. 2017). A person must subjectively fear danger of physical harm. Moreover, a reasonable person in the situation would have to fear a danger of physical harm. Id.
A "course of conduct" is a "pattern of conduct composed of two or more acts over a period of time, however short, that serves no legitimate purpose." §§ 455.010(14)(a)-(b). Section 455.010 provides a non-exhaustive list of examples of actions constituting an unwanted course of conduct: 1) following the other person; 2) unwanted communication; or 3) unwanted contact.
i. Course of Conduct
First, we determine whether Appellant engaged an unwanted "pattern of conduct composed of two or more acts over a period of time, however short, that serves no legitimate purpose." In the light most favorable to the judgment, Appellant engaged in a "course of conduct. We could not discern the dates and number of Appellant's posts from the record, but E.D.H. testified the "compilation" of posts spanned 3-4 days. A "compilation" of posts over several days comprises two or more acts. We decline to address whether Appellant's posts served a legitimate purpose, as neither party briefed the issue on appeal.
ii. Stalking
Stalking requires Appellant's course of conduct would cause alarm to a reasonable person. "Alarm" is defined as "fear of danger of physical harm." In K.L.M. v. B.A.G. , the respondent sent anonymous letters warning the petitioner about the petitioner's boyfriend, the respondent's former boyfriend. 532 S.W.3d at 708-09. The respondent later sent another letter that attempted to persuade the petitioner to leave her boyfriend. Id. at 708. Finally, the respondent hacked the petitioner's Facebook *65 page, downloaded her "profile picture," and inserted it into her own profile. Id.
This Court noted that while the hacking and misuse of another's Facebook account "possibly provides a basis for an action based in tort, such conduct, as described in the record before us, does not suggest any threat or reasonable fear of physical harm that is actionable [under the Act]." Id. at 711. We held because objective component of "alarm" was absent, it was unnecessary to analyze the subjective component. Id.
Here, Appellant's conduct would not have caused fear of physical harm in a reasonable person. Like in K.L.M. , Appellant never threatened or physically confronted E.D.H. Further, the Appellant's use of social media was far less invasive than the hacking in K.L.M . It is noteworthy E.D.H.'s petition and testimony focused on the disparaging nature of Appellant's posts. E.D.H.'s stated fear was harm to his reputation. However, such harm is not covered under the Act. § 455.010. His statement he "did not know what she is capable of" is essentially a "bare answer of 'yes' when asked if he ... was alarmed." Schwalm v. Schwalm, 217 S.W.3d 335, 337 (Mo. App. E.D. 2007). E.D.H. must do more to prove stalking. Id. Viewing the record in the light most favorable to the judgment, we do not find evidence from which a reasonable person in E.D.H.'s position would have feared physical harm.
iii. Harassment
To qualify as harassment, a course of conduct must be "a purposeful or knowing course of conduct involving more than one incident ... that alarms or causes distress." We do not address whether Appellant's conduct would have alarmed or distressed a reasonable person. The record wholly lacked sufficient evidence to support E.D.H. actually experienced emotional distress himself. Therefore, it is unnecessary to examine the objective components of harassment.
In M.N.M. v. S.R.B. , during a hearing on the petition, respondent testified that, "Appellant contacted two of [her] friends 'to talk about [her] in a negative way;' Appellant 'contacted [her] with a nasty text message;' and Appellant saw Respondent in the parking lot and called her a bitch." 499 S.W.3d 383, 384 (Mo. App. E.D. 2016). This Court concluded when viewed "in the light most favorable to the trial court's judgment, the evidence [on record] is wholly insufficient to establish that Respondent ... harassed Respondent as defined in the statute." Id. at 385. We stated: "nothing in her testimony indicated that she genuinely [was] substantially emotionally distressed by Respondent's alleged conduct." Id.
In the present case, E.D.H. answered "yes" during his testimony when asked if Appellant stalked and harassed him. Notwithstanding his affirmative answers, nothing in the record supports that E.D.H. experienced substantial emotional distress. E.D.H. was "contacted with [a few] nasty text message[s]," his friend(s) saw posts depicting him in a negative light, and Appellant called him "cowardly." The similarity between the present case and M.N.M. is striking. Accordingly, we find that Appellant did not cause E.D.H. substantial emotional distress.
Further, we noted in M.N.M. , and numerous other cases, the Act "was not intended to be a solution for minor arguments between adults." Id. ; Lawyer v. Fino , 459 S.W.3d 528, 530 (Mo. App. S.D. 2015). "There is a great potential for abuse [of the Act], and real harm can result from improper use of the Act." Lawyer , 459 S.W.3d at 530. Thus, "courts must exercise great vigilance to prevent abuse of [the Act]." Id. Courts must be sure "sufficient *66 credible evidence exists to support all elements of the statute before entering a protective order." Id.
The above precedent and the record require finding the trial court's judgment Appellant stalked and harassed E.D.H. lacked sufficient evidence. This finding is dispositive of the appeal. Points I and II are granted. We therefore decline to address Appellant's other arguments.
Conclusion
For the foregoing reasons, we reverse.[6]
Robert G. Dowd, Jr., J. and Mary K. Hoff, J. concur.

All statutory references are to RSMo 2016 unless otherwise indicated.

E.D.H. filled out a "check the box" petition, which contain boilerplate language and several checkboxes provide for making an allegation or allegations.

The trial judge handwrote "harassment" on the form, inserting it into the list of other behaviors prohibited under the Act.

Appellant's brief is deficient under Rule 84.04. She fails to properly organize her points relied on in her Argument section. 84.04(d). This Court has discretion to review on the merits notwithstanding any brief deficiencies if the disposition is not hampered by rule violations and the "argument is readily understandable." Moreland v. Div. Emp. Sec. , 273 S.W.3d 39, 41 (Mo. App. W.D. 2008). We review Appellant's brief ex gratia. Id. E.D.H. did not file a brief on appeal.

The record states the relationship started in the "summer." Neither an exact month nor time-span is provided in the record.

By our opinion, we do not condone cyber-bullying, libel, slander, or defamation. We can envision circumstances in which indirect communications in the form of online posts could support an order of protection under the Act. Those circumstances are completely lacking in the record before us. If online posts are defamatory, libelous, or slanderous, remedies exist under the law to address those posts.